**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SEMEITOUS FRANCIS o/b/o A.B.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-13862** |
| **ANDREW SAUL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | **SECTION: "G"(4)** |

## ORDER AND REASONS

Before the Court are Plaintiff Semeitous Francis' ("Plaintiff") objections[1] to the Report and Recommendation of the United States Magistrate Judge assigned to the case.[2] Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of Defendant, the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant"), denying her claim on behalf of her minor daughter, A.B., for supplemental security income ("SSI") under the Social Security Act (the "Act").[3] The Magistrate Judge recommended that the Administrative Law Judge's ("ALJ") decision denying SSI benefits be affirmed.[4] Plaintiff objects, arguing that the Magistrate Judge applied the wrong standard of review, and the ALJ's decision should be reversed.[5] Having considered Plaintiff's objections, the Magistrate Judge's Report and Recommendation, the record, and the applicable law, for the following reasons, the Court sustains

---

[1] Rec. Doc. 20.

[2] Rec. Doc. 19.

[3] Rec. Doc. 1.

[4] Rec. Doc. 19 at 17.

[5] Rec. Doc. 20.

Plaintiff's objections,, rejects the Magistrate Judge's Report and Recommendation and remands this case to the ALJ.

## I. Background

### A.    *Procedural History*

Plaintiff filed an application for SSI on behalf of her minor child, A.B., on March 31, 2016, due to A.B.'s Attention Deficit Hyperactivity Disorder ("ADHD").[6] After Plaintiff's claim was denied at the agency level, Plaintiff requested a hearing before an ALJ, which was held on October 24, 2017.[7] Plaintiff and A.B. testified at the hearing.[8]

The ALJ analyzed Plaintiff's claim pursuant to the three-step sequential evaluation process used to determine whether an individual under the age of 18 is disabled.[9] At step one, the ALJ found that A.B. had not engaged in substantial gainful activity since March 31, 2016, the application date.[10] At step two, the ALJ determined that A.B. has the following severe impairments: "Attention Deficit Hyperactivity Disorder and Conduct Disorder."[11]

At step three, the ALJ held that A.B. does not have an impairment or combination of impairments that meets or medically equals the severity of the impairment listed at 20 C.F.R.

---

[6] Adm. Rec. at 121–23. The application is dated April 18, 2016, but the ALJ used March 31, 2016 as the application date. *Id.*

[7] *Id.* at 25–51.

[8] *Id.*

[9] "For a child to be disabled under the meaning of the Act, the child must: (1) not be engaged in substantial gainful activity; (2) have an impairment that is 'severe'; and (3) have an impairment that 'meets, medically equals, or functionally equals' the impairments listed in the disability regulations." *Richard ex rel. Z.N.F. v. Astrue*, 480 F. App'x 773, 776 (5th Cir. 2012) (citing 20 C.F.R. § 416.924(a)–(d)).

[10] Adm. Rec. at 11–12.

[11] *Id.* at 14.

§ 404. Supbpt. P., Appendix 1.[12] At step three, the ALJ also considered six functional equivalence domains and determined that A.B. did not have an impairment or combination of impairments that functionally equals the severity of the listing.[13] The ALJ determined that A.B. had marked limitations in one domain—attending and completing tasks.[14] The ALJ found that A.B. had "less than marked" limitations in the following three domains: (1) acquiring and using information;[15] (2) interacting and relating with others;[16] and (3) health and physical well-being.[17] The ALJ determined that Plaintiff had no limitations in the following two domains: (1) moving about and manipulating objects;[18] and (2) caring for herself.[19] Therefore, the ALJ concluded that A.B. was not disabled as defined by the Act.[20]

Plaintiff requested review by the Appeals Council. The ALJ's decision became the final decision of the Commissioner for purposes of this Court's review after the Appeals Council denied review on October 10, 2018.[21] On December 14, 2018, Plaintiff filed a complaint in this Court

---

[12] *Id.*

[13] *Id.* at 14–21.

[14] *Id.* at 17–18.

[15] *Id.* at 16–17.

[16] *Id.* at 18–19.

[17] *Id.* at 24.

[18] *Id.* at 19–20.

[19] *Id.* at 20.

[20] *Id.* at 21.

[21] *Id.* at 1–5.

seeking judicial review pursuant to Section 405(g) of the Act.[22] This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B). On May 22, 2019, the Commissioner answered the Complaint.[23]

On July 2, 2019, Plaintiff filed a memorandum raising the following assignments of error; (1) the ALJ erred in failing to find that A.B.'s borderline intellectual functioning is a severe impairment; (2) the ALJ erred in determining A.B.'s impairments did not meet or medically equal Listing 112.08 or 112.11; and (3) the ALJ erred in failing to find that A.B. has a marked limitation in the acquiring and using information domain.[24] On August 7, 2019, the Commissioner filed a memorandum arguing: (1) the ALJ properly determined A.B.'s severe impairments; (2) A.B.'s impairments, individually or in combination, do not meet the requirements of Listings 112.08 or 112.11; and (3) A.B.'s impairments do not result in a marked limitation in acquiring and using information.[25]

### B.     *The Magistrate Judge's Report and Recommendation*

On March 2, 2020, the Magistrate Judge recommended that this Court affirm the ALJ's decision denying Plaintiff's application for SSI on behalf of A.B.[26] The Magistrate Judge cited the five-step sequential evaluation process used to determine whether an individual over the age of 18

---

[22] Rec. Doc. 1.

[23] Rec. Doc. 12.

[24] Rec. Doc. 15.

[25] Rec. Doc. 17.

[26] Rec. Doc. 19 at 17.

is disabled, rather than the three-step sequential evaluation process used to determine whether an individual under the age of 18 is disabled.[27]

First, the Magistrate Judge addressed Plaintiff's argument that A.B.'s borderline intellectual functioning was a severe impairment.[28] The Magistrate Judge noted that A.B. "demonstrated relative strength nonverbal intelligence and was able to show improved focus on task orientation, spatial reasoning which approximates low average range."[29] Therefore, the Magistrate Judge found that the medical record did not support Plaintiff's assertion that A.B.'s borderline intellectual functioning was a severe impairment.[30]

Second, the Magistrate Judge addressed Plaintiff's claim that A.B.'s impairments meet Listing Level 112.08 and 112.11.[31] The Magistrate Judge reviewed the medical evidence, and found that "the ALJ's decision that A.B.'s Attention Deficit Hyperactivity and Conduct Disorder does not meet all the requirements of Listing 112.11 is based upon substantial evidence."[32]

Third, the Magistrate Judge addressed Plaintiff's argument that the ALJ erred by failing to find that A.B. has a marked limitation in the acquiring and using information domain.[33] The Magistrate Judge noted that Plaintiff stopped giving A.B. medications that were prescribed to her

---

[27] *Id.* at 4–7.

[28] *Id.* at 10.

[29] *Id.*

[30] *Id.*

[31] *Id*.

[32] *Id*. at 12–14.

[33] *Id*. at 14.

by her doctor.[34] The Magistrate Judge stated that "[i]n order to get benefits, the claimant [m]ust follow treatment prescribed by her physician if the treatment can restore ability to work."[35] The Magistrate Judge determined that "A.B.'s noncompliance is not the result of her mental impairment and there is no evidence of an acceptable reason for not providing her with the medication."[36] Therefore, the Magistrate Judge recommended that the Court affirm the ALJ's decision denying Plaintiff's claim for SSI on behalf of A.B.[37]

## II. Objections

### A.    *Plaintiff's Objections*

Plaintiff timely filed objections to the Magistrate Judge's Report and Recommendation.[38] Plaintiff argues the Magistrate Judge erred in recommending that the ALJ's decision be affirmed.[39] Plaintiff asserts that the Magistrate Judge improperly relied on the adult standard concerning the ability to work throughout the Report and Recommendation.[40] Because A.B. is a minor child, Plaintiff asserts that the Magistrate Judge should have applied the "whole child standard."[41] Accordingly, Plaintiff argues that this Court should decline to adopt the Magistrate Judge's Report and Recommendation, sustain Plaintiff's objections, and remand the case to the Commissioner for

---

[34] *Id.* at 16.

[35] *Id.*

[36] *Id.*

[37] *Id.* at 17.

[38] Rec. Doc. 20.

[39] Rec. Doc. 20-2 at 1.

[40] *Id.*

[41] *Id.*

another hearing.[42] Plaintiff reiterates her prior argument that the ALJ erred by: (1) failing to find that A.B.'s borderline intellectual functioning is a severe impairment; (2) determining A.B.'s impairments did not meet or medically equal Listings 112.08 or 112.11; and (3) failing to find that A.B. has a marked limitation in the acquiring and using information domain.[43]

First, Plaintiff asserts that the ALJ failed to consider A.B.'s serious impairment of borderline intellectual functioning.[44] Plaintiff asserts that A.B.'s borderline intellectual functioning "more than minimally affect A.B.'s ability to function."[45] Therefore, she argues that these impairments must be considered serious.[46]

Second, Plaintiff contends that the ALJ committed reversible error in determining that A.B.'s impairments did not meet or medically equal Listing 112.08 or Listing 112.11.[47] Plaintiff argues that A.B. has abnormalities in cognitive processing, deficits in attention or impulse control, low frustration tolerance, difficulty with organizing, and deficits in social skills.[48] Plaintiff notes that A.B.'s teacher stated she learns as a disabled person, and A.B. has impaired insight and

---

[42] *Id*. at 2.

[43] *Id.* at 12–18.

[44] *Id.* at 12–13 (citing *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985)).

[45] *Id*. at 13.

[46] *Id*.

[47] *Id*.

[48] *Id*.

judgement.[49] Therefore, Plaintiff argues that A.B.'s impairments meet Listing 112.08 and Listing 112.11.[50]

Third, Plaintiff contends that the ALJ erred by failing to find that A.B. has a marked limitation in the acquiring and using information domain.[51] In support of this contention, Plaintiff asserts that A.B. scored two deviations below the mean in Reading and Academic Skill, requires special education and learning interventions, and performs below her grade level.[52] Regarding her ability to interact with others, Plaintiff argues that A.B. is easily distracted, speaks loudly, and is often interfering in other students' affairs.[53] Thus, Plaintiff contends that A.B. has a marked impairment in the acquiring and using information domain and in the attending to and completing tasks domain.[54]

## B.    The Commissioner's Response

In response, the Commissioner acknowledges that "the Magistrate Judge's Report and Recommendations implements the incorrect provisions of regulations related to Social Security claims."[55] However, the Commissioner contends that the recommendation to affirm the ALJ's decision should be adopted as substantial evidence supports the decision.[56] Accordingly, the

---

[49] *Id*. at 13–14.

[50] *Id*. at 14.

[51] *Id*.

[52] *Id*.

[53] *Id*. at 18.

[54] *Id*. at 14–15.

[55] Rec. Doc. 22 at 1.

[56] *Id*.

Commissioner argues that the ALJ's decision should be affirmed for the reasons set forth in the initial brief filed before the Magistrate Judge.[57]

In the initial brief, the Commissioner argues: (1) the ALJ properly determined A.B.'s severe impairments; (2) A.B.'s impairments, individually or in combination, do not meet the requirements of Listings 112.08 or 112.11; and (3) A.B.'s impairments do not result in a marked limitation in acquiring and using information.[58]

First, the Commissioner asserts that the ALJ properly determined that A.B.'s ADHD and conduct disorder were severe impairments.[59] Although Plaintiff contends that A.B. exhibited severe borderline intellectual functioning, the Commissioner asserts that the record does not support such finding.[60] For example, the Commissioner notes that a consultative examiner, Scuddy Fontenelle, Ph.D., examined A.B. on two occasions and noted that at age six, A.B. was able to touch and name six out of six body parts; identify and name six out of six colors; and was able to count from 1 to 30.[61] According to the Commissioner, when Dr. Fontenelle examined A.B. at age nine she exhibited reality based thoughts; she remained able to complete the same tasks she did at the previous evaluation; and she was able to add and subtract.[62] The Commissioner asserts that

---

[57] *Id.*

[58] Rec. Doc. 17.

[59] *Id.* at 6.

[60] *Id.*

[61] *Id.* (citing Adm. Rec. at 162).

[62] *Id.* (citing Adm. Rec. at 169).

such evidence does not support Plaintiff's allegation of severe borderline intellectual functioning.[63] Furthermore, the Commissioner argues that Plaintiff has not met her burden of showing that A.B.'s alleged impairment is severe.[64] Thus, the Commissioner contends that the ALJ made the proper finding at step two of the three-step sequential evaluation process.[65]

Second, the Commissioner asserts that A.B.'s impairments, individually or in combination, do not meet the requirements of Listings 112.08 (personality and impulse-control disorders) and 112.11 (neurodevelopmental disorders).[66] The Commissioner notes that Plaintiff did not brief any argument concerning Listing 112.08.[67] As for Listing 112.11, the Commissioner asserts that Plaintiff failed to cite evidence to support her assertion that A.B. met all of the criteria of the listed impairment.[68]

Third, the Commissioner argues that A.B.'s impairments do not result in a marked limitation in acquiring and using information.[69] The Commissioner notes that Plaintiff relies heavily on test results indicating that A.B. scored "two deviations below the mean."[70] However, the Commissioner asserts that no single piece of information taken in isolation can establish

---

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.* at 6–7.

[67] *Id.* at 7.

[68] *Id.*

[69] *Id.* at 8.

[70] *Id.*

whether [A.B. has] a marked or extreme limitation in a domain."[71] The Commissioner points to the September 2016 consultative examination by Dr. Fontenelle, finding that A.B. could add and subtract, was learning multiplication, understood vocabulary, and could "understand and comprehend routine school activity."[72] Furthermore, the Commissioner notes that Dr. Fontenelle also noted that A.B. exhibited many traits of ADHD that could be remedied by medication—treatment that Plaintiff has declined to administer to A.B.[73] According to the Commissioner, education records show that while A.B. was behind a grade level in reading and language arts, she performed at her grade level in math,[74] and a behavioral health assessment in October 2017 revealed that A.B. had normal memory and normal intellectual functioning.[75] Therefore, taking all evidence into consideration, the Commissioner asserts that A.B. exhibited "less than marked" limitation in the domain of acquiring and using information.[76]

### III. Standard of Review

*A.*    ***Review of the Magistrate Judge's Report and Recommendation***

In accordance with Local Rule 73.2, this case was referred to a Magistrate Judge to provide a Report and Recommendation. A district judge "may accept, reject, or modify the recommended

---

[71] *Id.* (citing 20 C.F.R. § 416.926a(e)(4)).

[72] *Id.* at 9 (citing Adm. Rec. at 169–70).

[73] *Id.* (citing Adm. Rec. at 169–70).

[74] *Id.* (citing Adm. Rec. at 175–77).

[75] *Id.* (citing Adm. Rec. at 204).

[76] *Id.*

disposition" of a magistrate judge on a dispositive matter.[77] The district judge must "determine *de novo* any part of the [Report and Recommendation] that has been properly objected to."[78] A district court's review is limited to plain error of parts of the report which are not properly objected to.[79]

## B. *Standard of Review of Commissioner's Final Decision on SSI Benefits*

Under 42 U.S.C. § 405(g) the district court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[80] Appellate review of the Commissioner's denial of SSI benefits is limited to determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence.[81] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[82] The Court must review the whole record to determine if such evidence exists.[83] However, the district court cannot "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the

---

[77] Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

[78] *Id.*

[79] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

[80] 42 U.S.C. § 405(g).

[81] *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Waters v. Barnhart*, 276 F.3d 716, 716 (5th Cir. 2002); *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

[82] *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Perez*, 415 F.3d at 461; *Loza*, 219 F.3d at 393; *Villa*, 895 F.2d at 1021–22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)).

[83] *Singletary v. Bowen*, 798 F.2d 818, 822–23 (5th Cir. 1986).

Commissioner's."[84] The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.[85]

## IV. Law and Analysis

### A. Law Applicable to Qualification for SSI for Children Under Age 18

For a child under the age of 18, the Act defines disability as "a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[86] "For a child to be disabled under the meaning of the Act, the child must: (1) not be engaged in substantial gainful activity; (2) have an impairment that is 'severe'; and (3) have an impairment that 'meets, medically equals, or functionally equals' the impairments listed in the disability regulations."[87]

In the instant case, the ALJ found that A.B. satisfied the first two steps of the analysis because she had not engaged in substantial gainful activity since March 31, 2016, and she has the following severe impairments: "Attention Deficit Hyperactivity Disorder and Conduct Disorder."[88] At step three, the ALJ held that A.B. does not have an impairment or combination of

---

[84] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[85] *See Arkansas v. Oklahoma*, 503 U.S. 91 (1992).

[86] 42 U.S.C. § 1382c(a)(3)(C)(i).

[87] *Richard ex rel. Z.N.F. v. Astrue*, 480 F. App'x 773, 776 (5th Cir. 2012) (citing 20 C.F.R. § 416.924(a)-(d)).

[88] Adm. Rec. at 11–14.

impairments that meets or medically equals the severity of the impairment listed at 20 C.F.R. § 404. Supbpt. P., Appendix 1.[89]

In determining whether an impairment or combination of impairments functionally equals the listing, the ALJ must "assess the interactive and cumulative effects of all of the impairments for which we have evidence, including any impairments [] that are not 'severe.'"[90] In making this determination, the ALJ must consider the child's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.[91] To functionally equal a listing, a child must have an impairment or combination of impairments that result in "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain of functioning.[92]

A "marked" limitation interferes "seriously" with the "ability to independently initiate, sustain, or complete activities."[93] A limitation will be considered "marked" if standardized testing scores are at least two, but less than three, standard deviations below the mean, or for children under the age of three years old where the child is "functioning at a level that is more than one-half but not more than two-thirds of [the child's] chronological age."[94] An "extreme" limitation

---

[89] *Id.*

[90] *See* 20 C.F.R. § 416.926a(a).

[91] 20 C.F.R. § 416.926a(b)(1).

[92] 20 C.F.R. § 416.926a(d).

[93] 20 C.F.R. § 416.926a(e)(2)(i).

[94] 20 C.F.R. § 416.926a(e)(2)(i)–(ii).

interferes "very seriously" with the "ability to independently initiate, sustain, or complete activities."[95] A limitation will be considered "extreme" if standardized testing scores are at least three standard deviations below the mean, or for children under the age of three years old where the child is "functioning at a level that is one-half of [the child's] chronological age or less."[96]

In this case, the ALJ found that A.B. had marked limitations in one domain—attending and completing tasks.[97] The ALJ found that A.B. had "less than marked" limitations in the following three domains: (1) acquiring and using information;[98] (2) interacting and relating with others;[99] and (3) health and physical well-being.[100] The ALJ determined that Plaintiff had no limitations in the following two domains: (1) moving about and manipulating objects;[101] and (2) caring for herself.[102] Therefore, the ALJ concluded that A.B. was not disabled as defined by the Act.[103] The Court may disturb that finding only if the ALJ lacked "substantial evidence" to support it.[104]

---

[95] 20 C.F.R. § 416.926a(e)(3)(i).

[96] 20 C.F.R. § 416.926a(e)(3)(i)–(ii).

[97] Adm. Rec. at 17–18.

[98] *Id.* at 16–17.

[99] *Id.* at 18–19.

[100] *Id.* at 24.

[101] *Id.* at 19–20.

[102] *Id.* at 20.

[103] *Id.* at 21.

[104] *See Perez*, 415 F.3d at 461

### B. Analysis

Plaintiff argues the Magistrate Judge erred in recommending that the ALJ's decision be affirmed.[105] Plaintiff asserts that the Magistrate Judge improperly relied on the adult standard concerning the ability to work throughout the Report and Recommendation.[106] In response, the Commissioner acknowledges that "the Magistrate Judge's Report and Recommendations implements the incorrect provisions of regulations related to Social Security claims."[107] Because the Magistrate Judge relied on the incorrect standard, the Court rejects the Report and Recommendation and will review Plaintiff's claims *de novo*.[108]

### 1. Whether the ALJ erred by failing to find that A.B.'s borderline intellectual functioning was a severe impairment

First, Plaintiff asserts that the ALJ failed to consider A.B.'s serious impairment of borderline intellectual functioning.[109] Plaintiff asserts that A.B.'s borderline intellectual functioning "more than minimally affect A.B.'s ability to function."[110] Therefore, she argues that these impairments must be considered serious.[111] In response, the Commissioner asserts that the record does not support a finding that A.B. exhibited severe borderline intellectual functioning.[112]

---

[105] Rec. Doc. 20-2 at 1.

[106] *Id.*

[107] Rec. Doc. 22 at 1.

[108] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

[109] Rec. Doc. 20-2 at 12–13 (citing *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985)).

[110] *Id.* at 13.

[111] *Id.*

[112] Rec. Doc. 17 at 6.

In support, the Commissioner cites the consultative examinations performed by Dr. Scuddy Fontenelle, Ph.D.[113] The Commissioner asserts that such evidence does not support Plaintiff's allegation of severe borderline intellectual functioning.[114]

"The term borderline intellectual functioning describes a group of people who function on the border between normal intellectual functioning and intellectual disability, between 1 and 2 standard deviations below the mean on the normal curve of the distribution of intelligence, roughly an IQ between 70 and 85."[115]

Dr. Fontenelle examined A.B. on May 6, 2013, when she was six years old.[116] At that time, A.B. was able to touch and name six out of six body parts; identify and name six out of six colors; and was able to count from 1 to 30.[117] Dr. Fontenelle administered the Leiter International Performance Scale-Revised, and found that Plaintiff had a full scale IQ of 78.[118] He determined that A.B. had relative strengths in non-verbal intelligence and demonstrated spatial reasoning in the low average range.[119] Dr. Fontenelle opined that A.B.'s intelligence was within "the Borderline to Low Average" range.[120]

---

[113] *Id.*

[114] *Id.*

[115] Jannelien Wieland and Frans G. Zitman, BJPsych Bull. 2016 Aug; 40(4): 204–206, "It is Time to Bring Borderline Intellectual Functioning Back into the Main Fold of Classification Systems," https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4967780.

[116] Adm. Rec. at 160–62.

[117] *Id.* at 162.

[118] *Id.* at 161.

[119] *Id.*

[120] *Id.* at 162.

Dr. Fontenelle examined A.B. again on September 2, 2016.[121] At that time, A.B. was nine years old, she exhibited reality based thoughts; she remained able to complete the same tasks she did at the previous evaluation; and she was able to add and subtract.[122] Dr. Fontenelle opined that A.B.'s cognitive ability was within "the low average range."[123]

A.B. underwent an education evaluation at ReNew Schaumburg Elementary in 2016 because she was experiencing difficulties with reading and writing.[124] The evaluator found that A.B. exhibited "inadequate reading and math skills [and] a slow rate of learning and difficulty retaining the material previously taught."[125] The evaluator found that A.B. qualified "for the classification of Specific Learning Disability based on an academic deficit in the area[s] of basic reading, reading comprehension, and written language."[126] The evaluator determined that A.B., who was nine years old, needed remediation in reading and written language at the first grade level and remediation in math skills at the second grade level.[127]

---

[121] *Id.* at 168–70.

[122] *Id.*

[123] *Id.* at 170.

[124] *Id.* at 175–188.

[125] *Id.* at 181.

[126] *Id.* at 186.

[127] *Id.*

Natalie Ambrose, LPC, completed a behavioral health assessment of A.B. on October 9, 2017.[128] Ms. Ambrose found that A.B.'s intellectual functioning to be within the "normal/avg." range.[129]

Review of the ALJ's opinion reveals that although he did not find that A.B.'s borderline intellectual functioning was a severe impairment, the ALJ did thoroughly consider the medical records.[130] The ALJ gave the opinion of Dr. Fontenelle great weight.[131] The ALJ found that Dr. Fontenelle "gave accurate assessments of [A.B's] thought process, thought content, mood and affect, sensorium and cognition, judgement and insight, and functional capabilities."[132] The ALJ found that Dr. Fontenelle's "opinions are right on point with the rest of the objective evidence of record and clearly assesses [A.B's] condition."[133]

Even assuming that the ALJ should have found that borderline intellectual functioning was a severe impairment, this error alone does not demand reversal of the ALJ's decision. As the Fifth Circuit has explained, when an ALJ proceeds to subsequent steps of the sequential evaluation analysis and denies benefits on that basis, any alleged error in not finding a specific impairment severe is harmless.[134] In *Dise v. Colvin*, the ALJ found that the plaintiff suffered from a severe

---

[128] *Id.* at 198–205.

[129] *Id.* at 204.

[130] *Id.* at 11–21.

[131] *Id.* at 16.

[132] *Id.*

[133] *Id.*

[134] *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987); *Dise v. Colvin*, 630 F. App'x. 322, 324 (5th Cir. 2015) (per curiam).

mental impairment of oppositional defiant disorder ("ODD").[135] On appeal, the plaintiff argued that the ALJ erred in failing to address whether the plaintiff's depression was also a severe impairment.[136] The Fifth Circuit found that this argument was meritless because "[t]he remainder of the opinion clearly reflects that the ALJ considered all of [the plaintiff's] claimed impairments (including depression) in his assessment of [the plaintiff's] disability, even though he only mentioned ODD at step two. In short, 'this case did not turn on whether or not [the plaintiff's depression] impairment was severe,' but on subsequent steps in the analysis."[137]

As was the case in *Dise*, here, the ALJ's opinion clearly reflects that the ALJ considered all of A.B.'s claimed impairments in his assessment of A.B.'s disability. The ALJ's determination did not turn on whether A.B.'s intellectual functioning was severe but on subsequent steps in the analysis. Specifically, the ALJ determined that A.B. was not disabled at step three because A.B. did not have marked or extreme limitations in the six domains used to assess a child's functioning. Therefore, Plaintiff's argument that the ALJ's opinion should be reversed on this basis is without merit.

### 2. Whether the ALJ erred by determining A.B.'s impairments did not meet or medically equal Listing 112.08 or 112.11

Plaintiff contends that the ALJ committed reversible error in determining that A.B.'s impairments did not meet or medically equal Listing 112.08 or Listing 112.11.[138] Plaintiff argues

---

[135] *Dise*, 630 F. App'x. at 326.

[136] *Id.*

[137] *Id.* (quoting *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987)).

[138] Rec. Doc. 20-2 at 13.

that A.B. has abnormalities in cognitive processing, deficits in attention or impulse control, low frustration tolerance, difficulty with organizing, and deficits in social skills.[139] Plaintiff notes that A.B.'s teacher stated she learns as a disabled person, and A.B. has impaired insight and judgement.[140] Therefore, Plaintiff argues that A.B.'s impairments meet Listing 112.08 and Listing 112.11.[141] In response, the Commissioner notes that Plaintiff did not brief any argument concerning Listing 112.08.[142] As for Listing 112.11, the Commissioner asserts that Plaintiff failed to cite evidence to support her assertion that A.B. met all of the criteria of the listed impairment.[143]

Listing 112.08 applies to personality and impulse-control disorders.[144] To meet or medically equal Listing 112.08, the claimant must present medical documentation showing: (1) distrust and suspiciousness of others; (2) detachment from social relationships; (3) disregard for and violation of the rights of others; (4) instability of interpersonal relationships; (5) excessive emotionality and attention seeking; (6) feelings of inadequacy; (7) excessive need to be taken care of; (8) preoccupation with perfectionism and orderliness; or (9) recurrent, impulsive, aggressive behavioral outbursts.[145] The claimant must also have extreme limitation in one, or marked limitation in two, of the following areas: (1) understanding, remembering or applying information;

---

[139] *Id.*

[140] *Id.* at 13–14.

[141] *Id.* at 14.

[142] Rec. Doc. 17 at 7.

[143] *Id.*

[144] 20 C.F.R. § 404, Subpt. P, App. 1 § 112.08.

[145] *Id.*

(2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting and managing oneself.[146]

Listing 112.11 applies to neurodevelopmental disorders.[147] To meet or medically equal Listing 112.11, the claimant must present medical documentation showing: (1) frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks, and/or hyperactive and impulsive behavior; (2) significant difficulties learning and using academic skills; or (3) recurrent motor movement or vocalization.[148] The claimant must also have extreme limitation in one, or marked limitation in two, of the following areas: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting and managing oneself.[149]

The Social Security Regulations define "extreme" impairments as those that "interfere[] very seriously with [the child's] ability to independently initiate, sustain, or complete activities."[150] Extreme limitation is the rating given to the worst limitations, but "does not necessarily mean a total lack or loss of the ability to function."[151] An extreme limitation is equivalent to the level of

---

[146] *Id.*

[147] 20 C.F.R. § 404, Subpt. P, App. 1 § 112.11.

[148] *Id.*

[149] *Id.*

[150] 20 C.F.R. § 416.926a(e)(3)(i).

[151] *Id.*

functioning one "would expect to find on standardized testing with scores that are at least three standard deviations below the mean."[152]

The regulations define "marked" as "more than moderate but less than extreme."[153] A marked limitation "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."[154] The regulations provide that a child will have a "marked" limitation if she has "a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and [her] day-to-day functioning in domain-related activities is consistent with that score."[155]

The ALJ's opinion summarily concluded that A.B.'s impairments do not meet or medically equal the severity of Listing 112.08.[156] However, the ALJ's opinion does not discuss Listing 112.11.[157]

In *Audler v. Astrue*, the Fifth Circuit found that the "explicit terms" of the Act require that an ALJ "discuss the evidence offered in support of [the] claim for disability and to explain why [the ALJ] found [the claimant] not to be disabled at that step."[158] The Court noted that "the ALJ

---

[152] *Id.*

[153] 20 C.F.R. § 416.926a(e)(2)(i) (internal quotation marks omitted).

[154] *Id.*

[155] 20 C.F.R. § 416.926a(e)(2)(iii).

[156] Adm. Rec. at 14.

[157] *Id.*

[158] *Audler v. Astrue*, 501 F.3d 446, 448 (2007).

is not required to do an exhaustive point-by-point discussion," but it is an error for the ALJ to offer no evidence in support of a conclusion.[159] However, even if an ALJ erred in failing to state any reasons for an adverse determination, the reviewing court "must still determine whether this error was harmless."[160] "'Procedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'"[161] In *Audler*, the Fifth Circuit found that "[a]bsent some explanation from the ALJ to the contrary" the claimant appeared to have met her burden of demonstrating that she met the listing requirements, "and therefore her substantial rights were affected by the ALJ's failure to set out the bases for her decision at step three."[162] Accordingly, the Fifth Circuit remanded the case to the district court with directions to remand to the Commissioner for further proceedings.[163]

Here, the ALJ's opinion does not include any analysis as to whether A.B.'s impairments meet or medically equal the severity of Listing 112.11. Courts have recognized that "different methods are employed for determining whether an impairment meets or medically equals a listing as opposed to whether the impairment is functionally equivalent to a listing."[164] However, some courts have found a "significant overlap between the two in the context of a childhood ADHD impairment."[165] In this case, there is significant overlap between the arguments Plaintiff makes

---

[159] *Id.*

[160] *Id.* (citing *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 1988)).

[161] *Id.* (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)).

[162] *Id.* at 449.

[163] *Id.*

[164] *Magee v. Astrue*, No. 09-620, 2011 WL 1226011, at *4 (S.D. Miss. Mar. 29, 2011).

[165] *Id.* (citing *Rossi v. Commissioner of Social Security*, No. 10-97, 2010 WL 5313771, at 5 n. 6 (N.D.N.Y.

with respect to whether A.B. meets the requirements of Listing 112.11 and the ALJ's determinations regarding the acquiring and using information domain. Accordingly, the Court will look to the ALJ's analysis of whether A.B.'s impairments are functionally equivalent to the listing in determining whether substantial evidence supports the ALJ's finding that her impairments do not meet or medically equal the listing.

### 3. Whether the ALJ erred by failing to find that A.B. has a marked limitation in the acquiring and using information domain

Plaintiff contends that the ALJ erred by failing to find that A.B. has a marked limitation in the acquiring and using information domain.[166] In support of this contention, Plaintiff asserts that A.B. scored two deviations below the mean in Reading and Academic Skill, requires special education and learning interventions, and performs below her grade level.[167] Regarding her ability to interact with others, Plaintiff argues that A.B. is easily distracted, speaks loudly, and is often interfering in other students' affairs.[168] Thus, Plaintiff contends that A.B. has a marked impairment in the acquiring and using information domain.[169]

In response, the Commissioner argues that A.B.'s impairments do not result in a marked limitation in acquiring and using information.[170] The Commissioner notes that Plaintiff relies

---

Dec. 2, 2010)).

[166] Rec. Doc. 20-2 at 17.

[167] *Id.*

[168] *Id.* at 18.

[169] *Id.* at 14–15.

[170] Rec. Doc. 17 at 8.

heavily on test results indicating that A.B. scored "two deviations below the mean."[171] However, the Commissioner asserts that no single piece of information taken in isolation can establish whether [A.B. has] a marked or extreme limitation in a domain."[172] The Commissioner points to the September 2016 consultative examination by Dr. Fontenelle, finding that A.B. could add and subtract, was learning multiplication, understood vocabulary, and could "understand and comprehend routine school activity."[173] According to the Commissioner, education records show that while A.B. was behind a grade level in reading and language arts, she performed at her grade level in math,[174] and a behavioral health assessment in October 2017 revealed that A.B. had normal memory and normal intellectual functioning.[175] Therefore, taking all of the evidence into consideration, the Commissioner asserts that A.B. exhibited "less than marked" limitation in the domain of acquiring and using information.[176]

The acquiring and using information domain concerns how well a child acquires or learns information, and how well a child uses the information she has learned.[177] The Social Security Regulations provide that school-age children (age 6 to attainment of age 12) without an impairment "should be able to learn to read, write, and do math, and discuss history and science."[178] The child

---

[171] *Id.*

[172] *Id.* (citing 20 C.F.R. § 416.926a(e)(4)).

[173] *Id.* at 9 (citing Adm. Rec. at 169–70).

[174] *Id.* (citing Adm. Rec. at 175–77).

[175] *Id.* (citing Adm. Rec. at 204).

[176] *Id.*

[177] 20 C.F.R. § 416.926a(g).

[178] 20 C.F.R. § 416.926a(g)(2)(iv).

will need to use these skills in academic situations and in daily living situations at home and in the community.[179] The child should be able to use increasingly complex language to share information and ideas with individuals or groups, by asking questions and expressing her own ideas, and by understanding and responding to the opinions of others.[180]

Examples of limited functioning in acquiring and using information include: (1) failure to demonstrate understanding of words about space, size, or time; (2) inability to rhyme words or the sounds in words; (3) difficulty recalling important things learned in school the day before; (4) difficulty solving mathematics questions or computing arithmetic answers; and (5) ability to talk only in short, simple sentences and difficulty explaining what she means.[181]

The regulations define "marked" as "more than moderate but less than extreme."[182] A marked limitation "interferes seriously with [an individual's] ability to independently initiate, sustain, or complete activities."[183] The regulations provide that a child will have a "marked" limitation if she has "a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and [her] day-to-day functioning in domain-related activities is consistent with that score."[184]

---

[179] *Id.*

[180] *Id.*

[181] 20 C.F.R. § 416.926a(g)(3).

[182] 20 C.F.R. § 416.926a(e)(2)(i) (internal quotation marks omitted).

[183] *Id.*

[184] 20 C.F.R. § 416.926a(e)(2)(iii).

In this case, the ALJ determined that A.B. had a less than marked limitation in acquiring and using information.[185] The ALJ noted that Dr. Fontenelle found that A.B.'s thoughts were reality based.[186] The ALJ opined that A.B.'s thought content was focused on her interests in cartoons and movies.[187] He further opined that if A.B. liked school more and took her medication, she would improve in the domain of acquiring and using information.[188] He noted that A.B. was in regular classes.[189] He opined that A.B.'s school results would improve if her behavior improved.[190] Although A.B. was talkative, fidgety, and restless at times, the ALJ found that those conditions could improve with medication.[191]

The ALJ gave great weight to the opinion of Dr. Fontenelle, a consultative examiner.[192] As discussed above, Dr. Fontenelle examined A.B. on May 6, 2013, when she was six years old.[193] A.B. was able to touch and name six out of six body parts; identify and name six out of six colors; and was able to count from 1 to 30.[194] Dr. Fontenelle administered the Leiter International

---

[185] Adm. Rec. at 17.

[186] *Id.*

[187] *Id.*

[188] *Id.*

[189] *Id.*

[190] *Id.*

[191] *Id.*

[192] *Id.* at 16.

[193] Adm. Rec. at 160–62.

[194] *Id.* at 162.

Performance Scale-Revised, and found that Plaintiff had a full scale IQ of 78.[195] He determined that A.B. had relative strengths in non-verbal intelligence and demonstrated spatial reasoning in the low average range.[196] Dr. Fontenelle opined that A.B.'s intelligence was within "the Borderline to Low Average" range.[197] He found her speech communication skills to be within normal limits.[198] He found that A.B. showed significant characteristics of ADHD-Combined Type, and recommended that A.B. take her medication on a daily basis, as prescribed.[199]

Dr. Fontenelle examined A.B. again on September 2, 2016.[200] At that time, A.B. was nine years old, she exhibited reality based thoughts; she remained able to complete the same tasks she did at the previous evaluation; she was able to add and subtract; and she was learning multiplication.[201] Dr. Fontenelle opined that A.B.'s cognitive ability was within "the low average range."[202] Dr. Fontenelle opined that A.B.'s thought content was focused on her interest in cartoon shows and movies.[203] He also noted that A.B.'s speech skills were within normal range.[204] He

---

[195] *Id.* at 161.

[196] *Id.*

[197] *Id.* at 162.

[198] *Id.*

[199] *Id.*

[200] *Id.* at 168–70.

[201] *Id.* at 169.

[202] *Id.* at 170.

[203] *Id.* at 169.

[204] *Id.* at 170.

recommended that she use medication to manage her ADHD, and opined that she would benefit from behavior counseling sessions.[205]

The ALJ's opinion does not discuss the education evaluation A.B. underwent at ReNew Schaumburg Elementary in March 2016.[206] The evaluator found that A.B. exhibited "inadequate reading and math skills [and] a slow rate of learning and difficulty retaining the material previously taught."[207] The evaluator stated that A.B. "is learning like a student with a disability."[208] The evaluator found that A.B. qualified "for the classification of Specific Learning Disability based on an academic deficit in the area[s] of basic reading, reading comprehension, and written language."[209] The evaluator recommended that A.B. receive special education services, and she determined that A.B. needed remediation in reading and written language at the first grade level and remediation in math skills at the second grade level.[210]

Plaintiff asserts that the education evaluation reflects that A.B. scored "two deviations below the mean."[211] In response, the Commissioner points out that the regulations provide that the Social Security Administration ("SSA") will not rely on test scores alone to establish a marked limitation, as "no single piece of information taken in isolation can establish whether [the child

---

[205] *Id.*

[206] *Id.* at 175–188.

[207] *Id.* at 181.

[208] *Id.*

[209] *Id.* at 186.

[210] *Id.*

[211] Rec. Doc. 20-2 at 10.

has] a marked or extreme limitation in a domain."[212] Rather, the SSA "will consider [the child's] test scores together with other information . . . about [the child's] functioning."[213] Additionally, the child's day-to-day functioning in domain-related activities must be consistent with that score.[214]

The regulations also provide that the SSA must consider the effects of treatment (including medications) on the child's functioning.[215] If a child's symptoms or signs are reduced by medications, the Commissioner will consider: (a) any of the child's functional limitations that may nevertheless persist, even if there is improvement from the medications; (b) whether the child's medications create any side effects that cause or contribute to the child's functional limitations; (c) the frequency of the child's need for medication; (d) changes in the child's medication or the way the child's medication is prescribed; and (e) any evidence over time of how medication helps or does not help the child to function compared to other children of a similar age who do not have impairments.[216] Treatment or intervention may prevent, eliminate, or reduce functional limitations.[217]

---

[212] 20 C.F.R. § 416.926a(e)(4)(i).

[213] 20 C.F.R. § 416.926a(e)(4)(ii).

[214] 20 C.F.R. § 416.926a(e)(2)(iii).

[215] 20 C.F.R. § 416.924a(b)(9)(i).

[216] *Id.*

[217] 20 C.F.R. § 416.924a(b)(9)(iii).

Social Security Ruling 09-1P provides interpretations and information about the "whole child" approach for determining whether a child's impairments functionally equal the listing.[218] With regard to rating severity, the Ruling states:

> It is important to determine the extent to which an impairment(s) compromises a child's ability to independently initiate, sustain, and complete activities. To do so, we consider the kinds of help or support the child needs in order to function. In general, if a child needs a person, medication, treatment, device, or structured, supportive setting to make his functioning possible or to improve the functioning, the child will not be as independent as same-age peers who do not have impairments. Such a child will have a limitation, even if he is functioning well with the help or support.[219]

The Ruling acknowledges that the more help or support, of any kind, that a child receives, the less independent the child is in functioning, and the more severe the SSA will find the limitation to be.[220]

In the case of an adult seeking to recover SSI, the Fifth Circuit has recognized that "[a] medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."[221] Numerous courts have also applied this rule to children seeking SSI.[222] The ALJ

---

[218] Title XVI: Determining Childhood Disability Under the Functional Equivalence Rule-the "Whole Child" Approach, SSR 09-1P (S.S.A. Feb. 17, 2009)

[219] *Id.* at *6.

[220] *Id.* at *7.

[221] *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) (citing 20 C.F.R. §§ 404 .1530(a), (b) and 416.930(a), (b) (1986)) (additional citations omitted). *See also Muckelroy v. Astrue*, 277 F. App'x 510, 511–12 (5th Cir. 2008); *Hebert v. Barnhart*, 197 F. App'x 320, 323 (5th Cir. 2006).

[222] *McGrew ex rel. K.M. v. Colvin*, No. 13-237, 2014 WL 68766, at *11–12 (E.D. La. Jan. 8, 2014) (Wilkinson, M.J.) (adopted by Milazzo, J.) (citing *Richardson v. Barnhart*, 136 F. App'x 463, 466 (3d Cir. 2005); *Scales v. Barnhart*, 363 F.3d 699, 705 (8th Cir. 2004); *Scotino v. Colvin*, No. 4:12cv0674, 2013 WL 5291722, at * 10 (E.D. Mo. Sept.19, 2013); *Luna ex rel. A.L. v. Astrue*, No. 11–1137, 2013 WL 358883, at * 19–20 (D. Minn. Jan.8, 2013); *T.C. ex rel. Z.C. v. Comm'r of Soc. Sec.*, No. 10–5229, 2011 WL 3235735, at *7 (D.N.J. July 26, 2011); *L.B .M. ex rel. Motley v. Astrue*, No. 1:08–CV–1354–WTL–DML, 2010 WL 1190326, at *21 (S.D. Ind. Mar 23, 2010); *Thomas v. Astrue*, No. H–07–2043, 2008 WL 4279397, at *17 (S.D. Tex. Sept.16, 2008)).

suggests that A.B's ability to acquire and use information would improve with medication. When Dr. Fontenelle evaluated A.B. in 2016, he found that she needed medication management for ADHD.[223] However, Dr. Fontennelle noted that A.B. discontinued taking the medication due to its side effects.[224] During the hearing, Plaintiff testified that the medication caused drowsiness, but Plaintiff planned to consult with A.B.'s doctor about trying a lesser dosage of the medication.[225] The ALJ must consider whether the child's medications create any side effects that cause or contribute to the child's functional limitations.[226] The ALJ did not consider the side effects of the medication in assessing A.B.'s limitations.

The ALJ found that A.B. could focus on topics that interest her, including watching cartoons and movies. However, the ALJ did not consider the education evaluation in determining whether A.B. had a marked limitation in the acquiring and using information domain. The ALJ noted that A.B. was in regular classes, but the education evaluation found that A.B. should be receiving special education services.[227] The evaluator recommended that A.B. receive special education services, and she determined that A.B. needed remediation in reading and written

---

[223] Adm. Rec. at 170.

[224] *Id.* at 169.

[225] *Id.* at 36–37, 48–49.

[226] 20 C.F.R. § 416.924a(b)(9)(i).

[227] *Id.* at 186.

language at the first grade level and remediation in math skills at the second grade level.[228] The evaluator stated that A.B. "is learning like a student with a disability."[229]

This Court cannot reweigh the evidence or substitute its judgment for the ALJ.[230] However, the ALJ erred by failing to address the education evaluation, which suggests that A.B. may have a marked limitation in the domain of acquiring and using information. Accordingly, the Court will sustain Plaintiff's objection, and will remand this case to the ALJ pursuant to 42 U.S.C. § 405(g) for further consideration.

### V. Conclusion

For the reasons set forth in this Order and Reasons, the Court remands this case to the ALJ for further consideration consistent with this opinion. Accordingly,

**IT IS HEREBY ORDERED** that the Court **SUSTAINS** Plaintiff's objections and **REJECTS** the Report and Recommendation.

**IT IS FURTHER ORDERED** that the case is **REMANDED** to the ALJ pursuant to 42 U.S.C. § 405(g) for consideration of the record consistent with this Court's Order and Reasons.

**NEW ORLEANS, LOUISIANA,** this ___30th___ day of March, 2020.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[228] *Id.*

[229] Adm. Rec. at 181.

[230] *Newton*, 209 F.3d at 452.